UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AAB LOGISTICS, INC., SUCCESSOR | ) | |
| BY ASSIGNMENT OF CANOLLI | ) | |
| FREIGHT, LLC f/d/b/a CANOLLI | ) | |
| FREIGHT, INC., | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | 3:15-CV-3840-G |
| | ) | |
| VS. | ) | |
| | ) | |
| FORWARD AIR, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the defendants' motions to dismiss under Rule 12(b)(6)

(docket entries 17 and 19).  For the reasons stated below, the motions are granted in

part and denied in part.

I.  BACKGROUND

A.  Factual Background

Canolli Freight, LLC ("Canolli"), later succeeded by the plaintiff, AAB

Logistics, Inc. (collectively, "AAB"), commenced this action against the defendants,

Towne Air Freight, LLC, CLP Towne, Inc. (collectively, "Towne"), and Forward Air,

Inc. ("Forward"), asserting various claims arising out of a series of contracts.  *See*

AAB's Second Amended Complaint ("Amended Complaint") ¶¶ 10-12 (docket entry

16).  Canolli was a small trucking company with twenty trucks.  *Id.* ¶ 10.  Towne was

a logistics company that was subsequently acquired by Forward.  *Id.* ¶ 11.

Beginning in 2010, Canolli entered into a series of contracts with Towne.  *Id.*

¶ 12.  The contracts called for Towne to arrange deliveries for Canolli on behalf of

shippers, collect money from the shippers, and pay Canolli upon the completion of

the shipment.  See *id.* ¶¶ 12, 51.  The contract called for Towne to make certain

deductions, such as fuel expenses.  *Id.* ¶ 13.

The agreement operated satisfactorily for a year and a half.  *Id.* ¶ 12.  However,

Towne began deducting "a series of substantial phantom billings and/or unauthorized

changes from the payment [of] remittals."  *Id.*  Specifically, Towne deducted

excessive base plate fees and road taxes, and Towne failed to present line item

deduction reports to Canolli.  *Id.* ¶¶ 12-13.  Canolli received a fraction of the amount

owed in comparison to other similar contracts.  *Id.* ¶ 25.

Moreover, Towne ignored Canolli's inquiries into the deficiencies.  *Id.* ¶¶ 17,

20, 25.  In response to Canolli's inquiries, Towne cut the number of contracts that it

assigned to Canolli, which ultimately caused Canolli to file for Chapter 11

bankruptcy.  *Id.* ¶¶ 17, 19.  AAB contends that Towne owes it, at a minimum,

$921,350.94.  See *id.* ¶ 18.

In early 2015, Canolli learned that Forward sought to acquire Towne.  *Id.* ¶ 26. In February 2015, Canolli first refused to sign a consent agreement and a new contract with Forward.  *Id.* ¶¶ 26-27.  However, Forward verbally agreed to assume Towne's liabilities to Canolli, which would be paid from a $20 million fund.  *Id.* ¶ 28. In reliance on Forward's statements, Canolli signed the consent agreement.  *Id.* Finally, in March 2015, Forward either acquired or merged with Towne and assumed responsibility to pay Towne's liabilities to Canolli.  *Id.* ¶ 29.

### B.  Procedural Background

On October 19, 2015, Canolli filed a voluntary petition for Chapter 11 bankruptcy.  Forward's Motion for Permissive Abstention and Dismissal and Alternative Motion for Withdrawal of Reference at 1-2 (docket entry 1-1).  Canolli commenced this adversary action between the parties on October 27, 2015.  *Id.* at 2. On December 1, 2015, Forward filed a motion to withdraw the reference.  *Id.*  On January 12, 2016, Canolli amended its complaint to include claims against Towne. AAB's Amended Brief in Support of AAB's Response to Towne's Motion to Dismiss ("AAB Towne Response") at 6 (docket entry 32); AAB's Amended Brief in Support of AAB's Response to Forward's Motion to Dismiss ("AAB Forward Response") at 7 (docket entry 29).

On March 14, 2016, this court granted Forward's motion to withdraw the reference.  Order Granting Forward's Motion to Withdraw the Reference (docket

entry 5).  On July 7, 2016, AAB purchased by assignment all right, title, and interest in this lawsuit from a bankruptcy auction.  AAB Towne Response at 6; AAB Forward Response at 8.  On July 11, 2016, AAB amended its complaint.  *See* Amended Complaint.  On July 25, 2016, Towne and Forward both filed the instant motions. The motions are now ripe for decision.

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  *Rule 12(b)(6) Motion to Dismiss Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation

marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's

allegations "nudge" its claims against the defendant "across the line from conceivable to plausible."  See *id.* at 679, 683.

## 2. *Rule 9(b) Pleading Standard*

A complaint need only recite a short and plain statement of the claim showing that the pleader is entitled to relief.  FED. R. CIV. P. 8(a)(2).  When, however, defendants are charged with fraudulent activity, the plaintiff must state with particularity the circumstances constituting fraud.[1]  FED. R. CIV. P. 9(b).  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Fifth Circuit interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001); see also *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719, 724 (5th Cir. 2003) (stating that Rule 9(b) requires the plaintiff to lay out "the who, what, when, where, and how" of the alleged

---

[1]  As the Fifth Circuit has noted, the purpose of the heightened pleading standard of Rule 9(b) is to provide defendants with fair notice of the plaintiff's claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent a plaintiff from filing baseless claims in an attempt to discover unknown wrongs.  *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1067 (5th Cir. 1994).

fraud), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).  If the facts

pleaded in a complaint are within the opposing party's knowledge, fraud pleadings

may be based on information and belief.  See *Tuchman*, 14 F.3d at 1068.

Rule 9(b) permits a plaintiff to allege generally the defendant's intent to

commit fraud.  FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other condition

of mind of a person may be averred generally.").  A mere allegation that the

defendant had the requisite intent, however, will not satisfy Rule 9(b).  *Melder v.

Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *Tuchman*, 14 F.3d at 1068.  To

adequately plead fraudulent intent, the plaintiff must set forth specific facts that

support an inference of fraud.  *Tuchman*, 14 F.3d at 1068.  The factual background

adequate for an inference of fraudulent intent can be satisfied by alleging facts that

show the defendant's motive.  See *id.*

### B.  AAB's Claims Against Towne

#### 1.  *Claim for Breach of Fiduciary Duty*

To succeed on a breach of fiduciary duty claim under Indiana law[2] the plaintiff

must prove that:  (1) a fiduciary relationship existed; (2) a duty arising from this

relationship was breached; and (3) the breach harmed the fiduciary relationship's

beneficiary.  *Farmers Elevator Company of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79

---

[2]        The parties appear to agree that Indiana law controls this claim.  *See*
Towne Brief at 3-4; AAB Towne Response at 12-13.

(Ind. Ct. App.), *transfer denied*, 940 N.E.2d 823 (Ind. 2010); *Rapkin Group, Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 757 (Ind. Ct. App.), *transfer denied*, 40 N.E.3d 857 (Ind. 2015).

Towne contends that its mere contractual relationship with AAB did not amount to a fiduciary relationship. *See* Towne's Brief in Support of Its Motion to Dismiss ("Towne Brief") at 3-4 (docket entry 20). It is true that a contract, alone, does not give rise to a fiduciary relationship. *Morgan Asset Holding Corporation v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000) ("Contractual agreements do not give rise to a fiduciary relationship creating a duty."). However, "special relationships" arising from contractual relationships may give rise to fiduciary duties. See *Farmers Elevator Company of Oakville, Inc.*, 926 N.E.2d at 72, 79; *Kreighbaum v. First National Bank & Trust*, 776 N.E.2d 413, 419 (Ind. Ct. App. 2002) (recognizing that a contractual relationship can metamorphose into a fiduciary relationship). Such relationships are those based on "trust and confidence" between the parties. See *Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 852 (Ind. Ct. App. 2006). Such a relationship exists when "confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Id.* (quoting *Paulson v. Centier Bank*, 704 N.E.2d 482, 490 (Ind. Ct. App. 1998), *transfer denied*, 714 N.E.2d 174 (Ind. 1999)).

Here, AAB pled that Towne collected, held, and distributed money to Canolli and was required to account to Canolli.  *See* Amended Complaint ¶¶ 51-52.  Canolli clearly trusted Towne to honestly and accurately distribute its money.  See *id.* Moreover, throughout the contractual relationship, Towne had a position of superior bargaining power -- Towne had the ability to drastically reduce the number of shipping contracts Canolli received.  *Id.* ¶ 19.  This is sufficient to show that AAB placed "trust and confidence" in Towne.  See *Geiger & Peters, Inc.*, 854 N.E.2d at 852. Thus, AAB has sufficiently pled a claim for breach of fiduciary duty.  Towne's motion to dismiss this claim is denied.

## 2.  *Claim for Constructive Fraud*

A claim for constructive fraud under Indiana law[3] requires: "a duty owing by the party to be charged to the complaining party due to their relationship, and the gaining of an advantage by the party to be charged at the expense of the complaining party."  *Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind. Ct. App. 2002), *on reh'g*, 781 N.E.2d 770 (Ind. Ct. App.), *transfer denied*, 792 N.E.2d 44 (Ind. 2003).  Such a duty may arise from a fiduciary relationship or between a buyer and a seller when one party possesses vast superiority over the other.  *Id.*

---

[3]     The parties appear to agree that Indiana law governs this claim.  *See* Amended Complaint ¶ 56; Towne Brief at 5-6.

Constructive fraud claims must satisfy Rule 9(b). *Cincinnati Life Insurance Company v. Grottenhuis*, No. 2:10-CV-00205, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011) ("It is undisputed that the constructive and actual fraud claims are subject to heightened Rule 9(b) pleading standards."), *aff'd sub nom.*, *Cincinnati Life Insurance Company v. Beyrer*, 722 F.3d 939 (7th Cir. 2013). Towne contends that AAB fails to meet Rule 9(b)'s heightened pleading requirements by failing to allege the "who, what, when, where, and how" of the alleged fraud, as required by Rule 9(b). Towne Brief at 6.

Here, Towne is correct. AAB fails to allege who made the fraudulent statements, when the fraudulent actions occurred, and any additional specifics about AAB's inquiries. *See* Amended Complaint ¶¶ 14-20; see also *Williams*, 112 F.3d at 177. Thus, this claim must be dismissed.

### 3. *Claim for Civil Theft*

The Texas Civil Theft Liability Act provides that a defendant is liable to the plaintiff for damages resulting from a theft, as defined by the Texas Penal Code §§ 31.03-31.04. TEX. CIV. PRAC. & REM. CODE §§ 134.002-134.003. The Texas theft statute provides that it is an offense to "unlawfully appropriate[] property with intent to deprive the owner of [the] property." TEX. PENAL CODE ANN. § 31.03(a). "Appropriate" is defined as brining about the transfer of title, see *id.* § 31.01(4). "Appropriation of property is unlawful if it is without the owner's effective consent."

- 10 -

*Id.* § 31.03(b)(1).  "Consent is not effective if induced by deception or coercion."  *Id.*

§ 31.01(3)(A).  For purposes of the theft statute, "deception" includes "promising

performance that is likely to affect the judgment of another in the transaction and

that the actor *does not intend to perform* or knows will not be performed."  *Id.*

§ 31.01(1)(E) (emphasis added).  Thus, civil theft includes the element of intent.

Here, AAB has failed to plead sufficient facts to support liability for civil theft.

In conclusory fashion, AAB pled that "[Towne] committed civil theft against

[Canolli] by overcharging it and then retaining the monies that rightfully belonged to

[Canolli]."  Amended Complaint ¶ 53.  AAB has not pointed to anywhere in the

complaint where it alleges facts showing that Towne intentionally overcharged

Canolli.  Rather, Canolli "concluded" that Towne was intentionally stealing from it.

See *id.* ¶¶ 15, 50.  Canolli's factual allegations of Towne's intent pertain to Towne's

actions after Towne had already overcharged Canolli.  See *id.* ¶ 23.  Thus, this claim

must be dismissed.

### C.  AAB's Claims Against Forward

### 1.  *Claim for Breach of Oral Contract*

Forward contends that AAB's claim for breach of oral contract is barred by the

statute of frauds because AAB is attempting to enforce an oral guaranty.  Forward's

Brief in Support of Its Motion to Dismiss ("Forward Brief") at 3-4 (docket entry 18).

- 11 -

AAB responds that it is "merely [seeking] the enforcement of an agreement" that Forward would assume Towne's debts.  AAB Forward Response at 14.

The court agrees with AAB that its agreement with Forward is not a guaranty agreement to pay the debts of another.  AAB pled that Forward acquired and/or merged with Towne, making them one entity.  *See* Amended Complaint ¶¶ 11, 21, 29, 34.  Because Towne and Forward are alleged to have become a single entity, Forward could not have been offering to pay the debts of another -- but rather, its own debt.  It is well established that an offer to pay one's own debts does not bring a contract within the statute of frauds.  See *First National Bank v. Sanford*, 228 S.W. 650, 654 (Tex. Civ. App.--Texarkana 1920) ("That contract evidenced an original promise on the part of appellee to pay its own debt, not the debt of another within the meaning of the statute of frauds"); *W.A. Woods & Company v. Davis*, 1880 WL 8864, at *1 (Tex. Comm'n App. 1880).

Moreover, AAB meets the pleading requirements for a contract.[4]  AAB pled that Forward offered to pay Canolli a sum of money in exchange for Canolli signing the consent form.  *See* Amended Complaint ¶¶ 28, 33.  Canolli accepted this by signing the consent form.  *Id.* ¶ 28.  A contract is further evidenced by AAB's change

---

[4]     The elements of a valid oral contract include:  "(1) an offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding."  See *Cessna Aircraft Company v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.-Dallas 2006, pet. denied).

- 12 -

in position by signing the consent form after its initial refusal to do so.  See *id.* ¶¶ 26-28; see also *Cessna Aircraft Company*, 213 S.W.3d at 465 ("In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications.").  Thus, Forward's motion to dismiss this claim is denied.

## 2.  *Claim for Fraud in the Inducement*

A plaintiff who claims fraud in the inducement under Texas law must prove the basic elements of fraud, as well as an underlying contract that was induced.  *Kevin M. Ehringer Enterprises, Inc. v. McData Services Corp.*, 646 F.3d 321, 325 (5th Cir. 2011).  Here, AAB pled that there was a valid oral contract.  *See* Amended Complaint ¶¶ 31-38.  However, to succeed on this claim, AAB must satisfy Rule 9(b)'s particularity requirements.  Forward contends that AAB failed to identify the speaker of any of the oral agreements nor did it describe any such "assurances" with specificity.  *See* Forward Brief at 8-9.

The court agrees that AAB uses vague and general statements in its amended complaint.  While AAB adds further details in its brief, that will not be considered by the court.  *See* AAB Forward Response at 17-18.  In short, AAB failed to sufficiently describe "the who, what, when, where, and how" of the alleged fraud.  See *Benchmark Electronics, Inc.*, 343 F.3d at 724.  Thus, this claim must be dismissed.

- 13 -

### 3. *Claim for Aiding and Abetting Breach of Fiduciary Duty*

Contrary to Forward's assertion, a common law claim for aiding and abetting a breach of fiduciary duty exists in Texas. See *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.--Dallas 2007, no pet.). However, "[a] cause of action premised on a contribution to a breach of fiduciary duty must involve the knowing participation in such a breach." *Id.* at 580. Here, AAB pled that "[Forward] knew of the fiduciary relationship between [AAB] and [Towne] because it had been presented with the contracts, accounting, and correspondence as part of the merger and/or sale procedures." Amended Complaint ¶ 44.

However, similar to AAB's civil conspiracy claim, AAB did not plead that Forward knew about nor assisted Towne in Towne's alleged breach. Cf. *Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App.--Dallas 2011, no pet.) (finding that the defendant aided and abetted a breach of fiduciary duty by actively participating in the breach). Forward obtained its knowledge of Towne's contractual and fiduciary obligations *after* the alleged breach occurred. *See* Amended Complaint ¶¶ 44-45. Moreover, merely acquiring a contract does not show that Forward knew it was furthering, nor actively participating in, Towne's breach of fiduciary duty. *Id.*; see also *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.--Austin 2001, pet. denied) ("Wootten has presented no evidence that the Statesman knew about the contractual duty to prevent Barbara Wootten's body from being viewed.").

Thus, AAB's claim for aiding and abetting a breach of fiduciary duty must be dismissed.

4. *Claim for Successor Liability*

Some courts permit an implied assumption of the liabilities of a corporate predecessor.[5]  See, *e.g.*, *In re Fairchild Aircraft Corporation*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995), *vacated*, 220 B.R. 909 (Bankr. W.D. Tex. 1998).  However, Texas has a strong policy disfavoring liability for successor corporations.  See *Lockheed Martin Corporation v. Gordon*, 16 S.W.3d 127, 139 (Tex. App.--Houston [1st Dist.] 2000, pet. denied).  Texas law requires that a successor corporation "expressly assume" liability from its predecessor in order to be subject to successor liability. *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 780-81 (Tex. App.--Houston [1st Dist.] 2004, no pet.); *Lockheed Martin Corporation*, 16 S.W.3d at 139; see also *McKee v. American Transfer and Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1996) (Cummings, J.) ("[W]hen the successor corporation expressly assumes the liability of the predecessor corporation, the successor corporation will be liable for the predecessor corporation's liabilities.").

---

[5]     In the Fair Labor Standards Act context, this court has recognized an implied assumption of predecessor liabilities, including looking to "whether the successor had notice of potential liability when it acquired the relevant assets." *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 944 (N.D. Tex. 2014) (Fitzwater, J.).

Here, AAB sufficiently alleges that AAB expressly assumed Towne's liability. In the complaint, AAB contends that in exchange for Canolli signing a consent agreement, Forward would assume Towne's liabilities.  Amended Complaint ¶ 33. Moreover, AAB pled that Forward created a $20 million fund that would cover such liabilities.  *Id.*  Given that Forward was purportedly prepared to pay Towne's liabilities, it is plausible that Forward has expressly assumed Towne's liabilities. Thus, Forward's motion to dismiss this claim is denied.

### D.  Claims Against Both Towne and Forward

#### 1.  *Claim for Negligent Misrepresentation*

To recover on a negligent misrepresentation claim, a plaintiff must prove:

> (1) the representation [was] made by a defendant in the course of his business, or in a transaction in which [it] has a pecuniary interest; (2) the defendant supplie[d] 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffer[ed] pecuniary loss by justifiably relying on the representation.

*People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 WL 708872, at *6 (N.D. Tex. Mar. 7, 2007) (Fish, Chief J.) (quoting *Federal Land Bank Association of Tyler v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991)).  In addition, "[u]nder Texas law, the false information provided must be a misstatement of existing fact rather than a promise of future conduct."  *Kinder v. Federal National Mortgage Association*, No. 3:13-CV-4617-G, 2014 WL 4271149, at *7 (N.D. Tex. Aug. 29, 2014) (Horan, M.J.)

(finding a promise relating to future loan modifications was a promise of future conduct).

Moreover, when a plaintiff's fraud and negligent misrepresentation claims are based on the same set of facts, the plaintiff must satisfy Rule 9(b)'s pleading standard. *Benchmark Electronics, Inc.*, 343 F.3d at 723. AAB contends that its claims for negligent misrepresentation against the defendants are grounded in negligence rather than fraud. AAB Towne Response at 16; AAB Forward Response at 20. Here, AAB's fraud claims and its negligent misrepresentation claims both arise from Towne's incorrect deductions and its failure to correct those deductions. *See* Amended Complaint ¶¶ 58-61, 55-57. Thus, AAB's claims are grounded in fraud and it must satisfy Rule 9(b). See *Benchmark Electronics, Inc.*, 343 F.3d at 723 ("That is the case here, as Benchmark's fraud and negligent misrepresentation claims are based on the same set of alleged facts.").

However, AAB fails to meet Rule 9(b)'s pleading standard as to its claims against both defendants. AAB fails to specify who on behalf of the defendants made the alleged misrepresentations. *See* Amended Complaint ¶¶ 60-61. Moreover, it is unclear when and how the defendants made such representations. Additionally, there is no indication that Forward made a false statement of existing fact, rather, it appears that Forward's statement about reimbursing AAB pertained to a potential future performance. See *id.* ¶ 61; see also *O'Leary v. JP Morgan Chase Bank N.A.*, No.

3:13-CV-4484-M(BN), 2014 WL 1494083, at *4 (N.D. Tex. Apr. 15, 2014) (Lynn,

J.) ("All of the allegedly false statements identified in Plaintiffs petition concern

promises of future conduct.  None of them are statements of existing fact.").  Thus,

this claim against both defendants must be dismissed.

## 2.  *Claim for Civil Conspiracy*

Under Texas law, civil conspiracy requires:  (1) two or more persons; (2) an

object to be accomplished; (3) a meeting of minds on the object or course of action;

(4) one or more unlawful, overt acts; and (5) damages as the proximate result.  *Apani*

*Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 635 (5th Cir. 2002)

(quoting *Massey v. Armco Steel Company*, 652 S.W.2d 932, 934 (Tex. 1983)).  To

allege conspiracy to commit fraud, a plaintiff must plead conspiracy with sufficient

particularity.  *Petri v. Kestrel Oil & Gas Properties, L.P.*, Nos. H-09-3994, H10-CV-

122, H-10-CV-497, 2011 WL 2181316, at *3 (S.D. Tex. June 3, 2011) (citing *United*

*States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009)), but see *Tigue*

*Investment Company, Limited v. Chase Bank of Texas, N.A.*, No. 3:03-CV-2490-N, 2004

WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004) (Godbey, J.) (applying Rule 9(b)

only to "the circumstances constituting fraud").

The defendants contend that AAB did not allege a "meeting of the minds"

between Towne and Forward.  Towne Brief at 10; Forward Brief at 13-14.  To show a

meeting of the minds, the plaintiff must plead that there is a common intent.  See

*Miller v. American International Group, Inc.*, No. 3:04-CV-1417-P, 2006 WL 740936, at

*3 (N.D. Tex. Mar. 14, 2006) (Solis, J.).  Specifically, "there must be a preconceived

plan and unity of design and purpose."  *In re Enron Corporation Securities, Derivative &*

*ERISA Litigation*, 623 F. Supp. 2d 798, 809 (S.D. Tex. 2009) (quoting *Goldstein v.*

*Mortenson*, 113 S.W.3d 769, 779 (Tex. App.--Austin 2003, no writ).

Here, the underlying fraud that serves as the basis for the civil conspiracy

action occurred before Forward acquired Towne.  *See* Amended Complaint ¶¶ 12, 27-

29.  AAB's underlying fraud claims involved Towne making improper deductions.  *Id.*

At that time, Forward had not engaged in wrongful conduct.  *Id.* ¶¶ 27-29.

Consequently, Forward's failure to pay Towne's liabilities naturally occurred

*after* Towne's misconduct.  See *id.* ¶¶ 12, 27-29.  There was no common intent

between the defendants to engage in the underlying fraudulent conduct because each

defendant's misconduct occurred at different times.  While it is clear that AAB

asserts that each of the defendants engaged in wrongful conduct, AAB fails to allege a

meeting of the minds to jointly engage in wrongful conduct.  *See* Amended Complaint

¶ 64; see also *Miller*, 2006 WL 740936, at *3 ("Although Plaintiff alleges a

conspiracy and alleges wrongdoing by both parties, he does not present evidence of a

connection between them or even plead a common intent").  Thus, the defendants'

motions to dismiss this claim are granted.

### 3.  *Claim for Equitable Accounting*

In order to obtain an equitable accounting, a plaintiff usually must have a contractual or fiduciary relationship with the party from which the accounting is sought.  See *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.--Tyler 1983, writ ref'd n.r.e.) (holding that there must be a contractual or fiduciary relationship between the parties in order to obtain an equitable accounting).  Furthermore, when a party can obtain adequate legal relief through the use of standard discovery procedures, a trial court need not order an accounting.  See *MDU Barnett Limited Partnership v. Chesapeake Exploration Limited Partnership*, No. CIV.A. H-12-2528, 2014 WL 585740, at *6 (S.D. Tex. Feb. 14, 2014).

The defendants contend that AAB fails to allege facts that show this case is so complex that the use of standard discovery procedures will provide it with relief. Forward Brief at 15; Towne Brief at 10-11.  The court agrees that ordinary discovery procedures are sufficient to obtain the "records" that AAB seeks.  *See* Amended Complaint ¶ 68.  AAB may obtain these documents through requests for production. See *MDU Barnett Limited Partnership*, 2014 WL 585740, at *6 ("When a party can obtain adequate relief through standard discovery procedures, including requests for production and interrogatories, the district court does not err by denying an equitable accounting.").  Thus, the defendants' motions to dismiss this claim are granted.

4.  *Claims for Quantum Meruit, Money Had and
Received, and Unjust Enrichment*

Under Texas law, a *quantum meruit* claim must include proof that:  (1) valuable

services were rendered or materials furnished; (2) for the entity sought to be charged;

(3) which services and materials were accepted by the entity sought to be charged,

used and enjoyed by it; (4) under such circumstances as reasonably notified the

entity sought to be charged that the plaintiff in performing such services was

expecting to be paid by the entity sought to be charged.  *Thompson Advisory Group, Inc.

v. First Horizon National Corporation*, No. 3:07-CV-0683-G, 2007 WL 2284352, at *4

(N.D. Tex. July 6, 2007) (Fish, Chief J.) (quoting *Bashara v. Baptist Memorial Hospital

System*, 685 S.W.2d 307, 310 (Tex. 1985)).

In addition "[r]ecovery under indisputably enforceable contracts precludes

recovery in *quantum meruit*, unless an exception applies or it is plausible that the

services rendered fall outside of the express contract."  *Triumph Aerostructures, LLC v.

Lockheed Martin Corporation*, No. 3:10-CV-2030-M, 2011 WL 1336399, at *1, *2

(N.D. Tex. April 6, 2011) (Lynn, J.) (holding that while the plaintiff "incorporates

into its *quantum meruit* claim paragraphs which assert the existence of an enforceable

contract, [the plaintiff] is entitled to plead inconsistent facts in support of alternative

claims.").  In denying the defendant's motion to dismiss, the *Triumph Aerostructures*

court stated that "[w]hile not expressly alleged, it is implicit in the claims that [the

plaintiff] may have a claim that it provided services outside a binding contract." *Id.* at *2.

Such exceptions include overpayments under a contract. *Becker v. National Education Training Group, Inc.*, No. 3:01-CV-1187-M, 2002 WL 31255021, at *4 n.32 (N.D. Tex. Oct. 7, 2002) (Lynn, J.) (stating that such exceptions apply when the parties' claims are for "*overpayments* under a contract") (emphasis in original); *Southwestern Electric Power Company v. Burlington Northern Railroad Company*, 966 S.W.2d 467, 469-70 (Tex. 1998) (noting that a party may recover overpayments under a contract by asserting a claim for unjust enrichment or restitution).

AAB contends that it provided services to the defendants for which it was overcharged. *See* Amended Complaint ¶¶ 11-20. The defendants deny this and contend that an express contract governs any services that AAB provided. *See* Forward Brief at 16-17; Towne Brief at 12. Forward further contends that AAB's claim involves improper deductions, not inadequate compensation. Forward Brief at 17, 22.

The defendants' contentions fail. Here, AAB's allegations that Towne improperly deducted certain payments amount to a failure to adequately compensate. Amended Complaint ¶¶ 73-74; see also *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951) (allowing restitution when the defendant withheld money from the plaintiff). Moreover, the defendants' improper deductions resulted in them receiving

more than called for under the contract -- thereby taking such benefits out of the express contract.  See *Bowers v. Missouri, K. & T. Ry. Co. of Texas*, 241 S.W. 509, 512 (Tex. Civ. App.--Texarkana 1922, no writ) (allowing *quantum meruit* recovery when charges paid in excess of rates specified in a shipping contract).  Thus, the defendants' motions are denied as to AAB's claims for *quantum meruit*, money had and received, and unjust enrichment.  See *Southwestern Electric Power Company*, 966 S.W.2d at 469-70 (holding a claim for unjust enrichment may be had where overpayment was made under a valid contract); *Walsh v. America's Tele-Network Corporation*, 195 F. Supp. 2d 840, 851-52 (E.D. Tex. 2002); *Staats*, 243 S.W.2d at 687 (noting that the plaintiff must only show that a defendant holds money which belongs to it to state a claim for money had and received).  The defendants' motions to dismiss these claims are denied.

### 5.  *Claim for Constructive Trust*

A constructive trust is an equitable remedy courts use to prevent unjust enrichment.  *Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*, 646 F. Supp. 2d 860, 870 (S.D. Tex. 2009).  "To obtain a constructive trust, the proponent must prove:  (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable *res*."  *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.--Dallas 2006, no pet.).

As discussed above, AAB's claims arise from a fiduciary relationship with Towne, fraud, and unjust enrichment. *See generally* Amended Complaint. Moreover, AAB pled that Forward set aside a $20 million fund to pay Towne's overcharges. See *id.* ¶¶ 28, 33, 93. Moreover, AAB specifically pled that the $921,350.94 owed to it was sitting in this fund. *Id.* ¶ 28. Thus, AAB has plausibly traced Towne's improper deductions to the fund.[6] Thus, the defendants' motions to dismiss this claim are denied.

### 6.  *Claim for Promissory Estoppel*

To succeed on a claim of promissory estoppel under Texas law, AAB must prove:  (1) the existence of a promise; (2) foreseeability by the defendant that the plaintiff would rely on the promise; and (3) substantial reliance by the plaintiff to its detriment. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.--Houston [14th Dist.] 1999, pet. denied).  While the existence of an express contract usually precludes recovery for promissory estoppel, Federal Rule of Civil Procedure 8 allows parties to plead in the alternative, even if theories are inconsistent.  *See* FED. R. CIV. P. 8(d)(2), (d)(3).

---

[6]     However, beyond the pleading phase, AAB will need to specifically trace its property to the fund before the court will impose such a trust.  *Southwest Livestock & Trucking Company v. Dooley*, 884 S.W.2d 805, 811 (Tex. App.--San Antonio 1994, writ denied) (holding that the beneficiary must trace its property to the commingled fund).

Here, AAB pled that Forward promised to pay Towne's liabilities to AAB.

Amended Complaint ¶ 84.  AAB further alleges that, at the time of Forward's

promise, Forward and AAB were negotiating a consent agreement.  *Id.* ¶¶ 27-28.

Moreover, Forward made the promise to persuade AAB to sign the consent

agreement.  *Id.*  Lastly, AAB pled that it relied on Forward's promise to its detriment

by signing the consent agreement.  *Id.*  Thus, it is reasonable to infer that AAB

detrimentally relied on this promise and put itself in a worse position by signing the

consent agreement.  See *Hoyt v. Saxon Mortgage Services, Inc.*, No. 3:15-CV-3693-G,

2016 WL 3855176, at *7 (N.D. Tex. July 15, 2016) (Fish, J.) ("To have

detrimentally relied on [the defendant's] promise, the plaintiffs must have shifted

from a better position to a worse position based on the promise.").  AAB's amended

complaint therefore alleges a sufficiently clear promise, its own reliance, and an

explanation of the injury that resulted.  Thus, the defendants' motions are denied as

to this claim.

### 7.  *Claim for Fraudulent Transfer under TUFTA*

A successful claim under the Texas Uniform Fraudulent Transfer Act

("TUFTA") requires a plaintiff to prove that:  "(1) [it] is a 'creditor' with a claim

against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the

plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder,

delay, or defraud the plaintiff."  *Dontos v. Vendomation NZ Limited*, 582 F. App'x 338,

344 (5th Cir. 2014) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428

S.W.3d 191, 203-05 (Tex. App.--Houston [1st Dist.] 2013, pet. denied)).

The defendants contend that AAB failed to satisfy Rule 9(b)'s heightened

pleading standard.  *See* Forward Brief at 22-23; Towne Brief at 14.  The Fifth Circuit

has yet to address whether the heightened pleading standard of Rule 9(b) applies to

claims for fraudulent transfer.  See *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir.

2011).  However, the trend in this district is to conclude that fraudulent

consideration claims are not subject to Rule 9(b)'s pleading requirements.  See *Janvey*

*v. Alguire*, No. 3:09-CV-0724-N, 2011 WL 7047035, at * 10 (N.D. Tex. Sept.6,

2011) (Godbey, J.); *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-

CV-0572-L, 2009 WL 5173954, at * 10 (N.D. Tex. Dec. 31, 2009) (Lindsay, J.).

Moreover, the court agrees that there is "no principled reason for applying

Rule 9's pleading requirements to [the plaintiff's] fraudulent transfer claims." *Janvey*,

2011 WL 7047035 at * 10 (quoting *Wing v. Horn*, No. 2:09-CV-342, 2009 WL

2843342, at *5 (D. Utah Aug. 28, 2009)).  This is because fraud is simply not an

aspect of a fraudulent transfer claim.  For example, a plaintiff will make out a claim

for common law fraud under Texas law by demonstrating:  "(1) material

misrepresentation; (2) falsity; (3) knowledge; (4) intention to induce reliance;

(5) reliance; and (6) injury." *Newington Limited v. Forrester*, No. 3:08-CV-0864-G,

2011 WL 3652425, at * 3 (N.D. Tex. Aug.16, 2011) (Fish, J.).  In a fraud claim, the

plaintiff must show that the defendant had both "knowledge" of the fraud and an "intention to induce reliance." See *id.* In contrast, in a fraudulent transfer claim, the defendant's intent or conduct is irrelevant. *See* TEX. BUS. AND COM. CODE §§ 24.005-24.006; see also *Wing*, 2009 WL 2843342 at *5 ("[T]he defendant's conduct is simply not an element of the [fraudulent transfer] claim.")).

Finally, the policies behind the heightened pleading requirements for fraud claims do not apply in the fraudulent transfer context. Unlike fraud claims, fraudulent transfer claims are unlikely to cause defendants significant "harm to their reputation and goodwill." *Tuchman*, 14 F.3d at 1067. Moreover, fraudulent transfer claims are not subject to abusive use in "strike suits" and are unlikely to help a plaintiff in an attempt "to discover unknown wrongs." *Id.*

Here, the court concludes that AAB sufficiently pled the requisite elements of a fraudulent transfer claim to satisfy Rule 8(a). *See* Amended Complaint ¶¶ 86-89. It is clear that AAB alleges that Towne transferred assets to Forward to delay payment of the debt owed to AAB. See generally *id.*

Forward also contends that a TUFTA claim is not proper because AAB seeks to recover "the debts of another" from Forward. Forward Brief at 23. However, AAB pled that it seeks to "set aside" such transfer against Forward -- the alleged transferee. Amended Complaint ¶ 89; see also *Clapper v. American Realty Investors, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at *6 (N.D. Tex. June 3, 2015) (Fitzwater, J.)

("TUFTA allows recovery against the debtor, *the transferee*, or the person for whose benefit the transfer was made.") (emphasis added).  Accordingly, the defendants' motions to dismiss this claim are denied.

### 8.  *Claim for Denuding the Corporation*

Texas courts apply this theory when an improper transfer of corporate assets occurred and the debtor corporation was solvent at the time of the transfer.  James Gerard Gaspard, II, *A Texas Guide to Piercing and Preserving the Corporate Veil*, BULL. BUS. L. SEC. ST. B. TEX., Sept. 1994, 24, 46-47.  Specifically, where a corporation has sold all of its assets to a third party, leaving it denuded, the third party may be liable to the corporation for the assets it received.  See *id.* (citing *World Broadcasting System, Inc. v. Bass*, 328 S.W.2d 863, 864-65 (Tex. 1959)).

As discussed under the fraudulent transfer claim, AAB alleges that Forward, in some capacity, acquired all of Towne's assets -- leaving Towne unable to pay its debts to AAB.  *See* Amended Complaint ¶¶ 11, 18, 92.  Thus, AAB has plausibly traced Towne's debts to Forward.  Therefore, the defendants' motions to dismiss this claim are denied.

### 9.  *Claim for Attorney's Fees*

The defendants contend that because AAB's claim for declaratory judgment fails, it is not entitled to attorney's fees.  Towne Brief at 15; Forward Brief at 24-25. However, AAB's claim for attorney's fees arises under TEX. CIV. PRAC. & REM. CODE

§ 38.001 (8), which provides for attorney's fees for prevailing on a breach of contract claim.  Thus, the defendants' motions to dismiss this claim are denied.

10.  *Claim for Past and Future Pain and Suffering*

The defendants contend that a corporation is incapable of obtaining pain and suffering damages.  Towne Brief at 25; Forward Brief at 26.  The court agrees. Moreover, AAB offers no facts demonstrating any "pain and suffering."  See *Kozan v. Comstock*, 270 F.2d 839, 844 n.16 (5th Cir. 1959) ("As a general rule a plaintiff in a suit for breach of contract cannot get damages for pain and suffering.").  Thus, the defendants' motions to dismiss this claim are granted.

III.  <u>CONCLUSION</u>

For the reasons stated above, the defendants' motions are **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

November 18, 2016.

A. JOE FISH
**Senior United States District Judge**

- 29 -